## THE NATIONAL CASH-REGISTER CO., RESPONDENTS, *v.* BROWN ET AL., APPELLANTS.

[Submitted February 8, 1897.   Decided February 15, 1897.]

*Partnership—Liability of Retiring Partner to Firm Creditors.*

PARTNERSHIP.—A retiring partner is liable to firm creditors, although in the agreement of dissolution the remaining partner assumes all firm indebtedness and retains all firm assets.

SAME.—The liability of the retiring partner to creditors is that of a principal and not that of a surety.

SAME—The fact that the firm creditor releases an attachment on property belonging to the remaining partner who is insolvent, constitutes no defence in an action against the retiring partner, although the release was made against his protest and with knowledge of the insolvency.

*Appeal from District Court, Park County.   Frank Henry, Judge.*

ACTION by the National Cash-Register Company against J. A. Brown and R. D. Alton, doing business as J. A. Brown & Co.   Judgment for plaintiff and Alton appeals.   Affirmed.

Statement of the case by the justice delivering the opinion.

This is an action commenced in a justice of the peace's court in Park county, by the plaintiff, to recover judgment against the defendants on four promissory notes, described in the complaint.   In the justice's court the defendant J. A. Brown defaulted, and judgment was entered against him.   The defendant R. D. Alton appeared, and filed a separate answer, which is in substance as follows :   It admits the execution of the notes sued on by the firm of J. A. Brown & Co., as alleged in the complaint.   Defendant Alton, for a further and separate defense, alleges that on the 7th day of April, 1894, and for a long time prior thereto, he and the defendant J. A. Brown were partners, doing business under the firm name and style of J. A. Brown & Co., at Livingston, Park county; that, on said day, said firm was dissolved, by mutual consent, by an

agreement in writing, by the terms of which agreement defendant Alton retired from said firm, and the defendant Brown continued the business conducted by said firm, took all the assets thereof, and agreed to collect the accounts due to, and pay all the indebtedness of, said firm of J. A. Brown & Co.; that, at the time of the dissolution of the firm, the notes in suit were outstanding against said firm; that thereafter, on the 19th day of November, 1894, the plaintiff commenced an action in the justice's court of Livingston township, in said county, against the defendants, upon the identical notes set forth in the complaint in this suit, by filing said notes in said justice's court, and procuring a summons to be issued thereon; that, at the time of the commencement of said suit, the plaintiff caused a writ of attachment to be issued out of said justice's court, which writ was delivered to the constable of said township, and which was served by said constable by levying upon sufficient property of the defendant J. A. Brown to fully pay off and satisfy said notes and costs; that, at the time of the commencement of said suit in said justice's court, the plaintiff and its attorneys were informed and knew of the dissolution of said firm, and that said J. A. Brown had succeeded to all the assets of the firm, and had contracted to pay the plaintiff's said demands, together with all the other indebtedness of said firm.    Defendant Alton further alleges that, at the time of the commencement of the said suit and the issue and levy of said attachment, the said defendant Brown was insolvent, and that this fact was well known to the plaintiff and its attorneys; that after the commencement of said suit and levy of said attachment, and while the constable had sufficient property in his possession under said writ of attachment to satisfy the plaintiff's demand, this defendant notified the plaintiff and its attorneys that the said firm of J. A. Brown & Co. had been dissolved, that said Brown had all of the assets of the firm, and had agreed to pay all of its indebtedness, including the plaintiff's demand, and urged and requested and demanded the plaintiff to proceed with said suit, and make the amount of its claim out of the property of the defendant J. A. Brown which

was then held under attachment; that said plaintiff, notwithstanding the urgent requests and demands of this defendant, and contrary to his expressed wish, and with full knowledge of all the facts aforesaid, released the property of said defendant Brown which was held under said writ of attachment, and dismissed said suit; that, subsequent to the release of said attachment and the dismissal of said suit, the defendant Brown made an assignment for the benefit of his creditors, and at all times since has been, and now is, insolvent and irresponsible financially. To this answer of defendant Alton, the plaintiff filed a general demurrer, which was overruled by the justice; and, the plaintiff having elected to stand on his demurrer, judgment was rendered by said justice in favor of defendant Alton, from which judgment plaintiff appealed to the district court. In the district court the case was again heard on the demurrer of plaintiff to the separate answer of defendant Alton, and the same was sustained; whereupon defendant R. D. Alton elected to stand on his answer, and judgment was entered against him. From this judgment, defendant Alton appeals.

*Campbell & Stark,* for Appellants.

"Where a partnership is dissolved and one partner purchases the interest of the other in the partnership property, and assumes and agrees to pay the partnership debts, he thereby becomes in equity the principal debtor as to such debts, and the other his surety, and a creditor having notice of such agreement is bound by such relationship." (*Colgrove* v. *Tallman*, 67 N. Y., 95, 23 Am. Rep. 90.) "Where one member of a partnership retires from it, agreeing with the others that they should pay the firm debts, the retiring partner, as to creditors having knowledge of the agreement, is a surety." (*Gourley* v. *Tyler et al.*, (Texas), 15 S. W. 731; citing Brandt on Sureties, 823; Baylies on Sureties, pp. 481, 482 and 40.) The same proposition is upheld by the following authorities: (*Kinney* v. *McCullough*, 1 Sand. Ch. 370; *Johnson* v. *Emerick*, 70 Mich. 215; *Barber* v. *Gilison*, 18 Nev.

89: *Wendlandt* v. *Sohre* (Minn.) 33 N. W. 700; Il Daniel's Neg. Inst. (Third Ed.) § 1300a; 24 Am. & Eng. Ency. Law, 721 and note; 17 *Id.*, 1129; *Williams* v. *Boyd*, 75 Ind. 286; *Johnson* v. *Young*, 20 W. Va. 614; *Chandler* v. *Higgins*, 109 Ill. 602.) "Where a lien is fixed, any act of the creditor which discharges that lien, without privity of the surety, discharges him." (*Curan* v. *Colbert*, 46 Am. Dec. 427; *Dixon* v. *Ewing*, 17 *Id.* 590; *Bank of Missouri* v. *Matson*, 72 *Id.* 208; *Robeson* v. *Robert*, 83 *Id.* 308; *Mingus* v. *Daugherty*, 43 Am. St. Rep. 354.)

*E. C. Day*, for Respondent.

PEMBERTON, C. J.—The appellant contends that by the terms of the dissolution of the partnership firm of J. A. Brown & Co., as set out in his separate answer, he became a surety for the payment of the firm's debts, and that he was entitled to the rights of such surety from the creditors of the firm having actual notice of the terms of the dissolution; and, further, that the plaintiff, having brought suit by attachment against the firm, and having attached sufficient property in the hands of Brown, the principal, to satisfy its demand, and subsequently, without the consent and against the protest of the surety, having released the attachment and dismissed the suit, thereby released appellant, the surety, from all liability on the notes sued on.

The questions raised by the contention of the appellant were fully discussed in *Rawson* v. *Taylor*, 30 Ohio St. 389, and the conclusion reached that "a retiring partner remains liable for all the existing debts of the firm, to the same extent as if he had not retired. An agreement between him and the remaining partners, or with the new firm that succeeds, that they will assume and pay all such debts, while valid as between the partners, has no effect upon the creditors of the old firm, unless they become parties thereto." In *Fensler* v. *Prather*, 43 Ind. 119, a case involving the question under discussion, it was said : "Two partners, owing debts and having assets, dissolve partnership; and, by agreement, one partner was to retain all the assets, and pay all the debts, and manage and

close up the business. The partner who had withdrawn from the management of the business, desiring a discharge from further personal liability on a certain note made by said firm, and held by one of the creditors thereof, acquainted such creditor with the facts of the partnership arrangement, and proposed to pay him one-half the amount of said note, the creditor to relieve him from further liability, and look to the effects in the hands of the former partner and to such partner personally for the other half, which proposition the creditor accepted, and one-half the amount of said note was then paid accordingly. *Held*, that such part payment was not a sufficient consideration for the promise to release the party making it as to the remainder." In *Shriver* v. *Lovejoy*, 32 Cal. 575, a case almost exactly like the one at bar, the court said : "The plaintiff sued Lovejoy (the surviving partner of Lovejoy & Co.) and Grandvoinet upon a joint and several promissory note made by Lovejoy & Co. Grandvoinet relied for a defense mainly on the fact that Lovejoy & Co. were the principal debtors; that he was only their surety; and that the plaintiff, after having commenced this action and attached sufficient property of Lovejoy to satisfy the demand, released the property from the attachment, and the same was attached by other creditors of Lovejoy. The court gave judgment for the plaintiff. All the makers of a joint and several promissory note, whatever may be their true relation between themselves, stand, as to the payee, as principals. The promise of each is an absolute and primary promise, not a conditional or secondary promise. The creditor is not interested in knowing the relation of the makers with each other. In a suit on the note, he ought not to be delayed by an investigation into matters which do not concern him." And it was held that the facts alleged constituted no defense. (*Johnson* v. *Emerick*, 70 Mich. 215, 38 N. W. 223.) This court in *Smith* v. *Freyler*, 4 Mont. 489, 1 Pac. 214, fully discusses the questions here presented, and collates the authorities. In that case we said : "When a surety signs a promissory note, his promise is absolute and unconditional to pay the same when it becomes due;

and there is no escape from this promise unless the payee or holder releases him.    He does not promise that he will pay if the payee or holder fails to collect the note by an action against the principal.    The payee or holder does not receive the note with an implied promise that he will exhaust his remedy against the principal before proceeding against the surety.    The obligation of the surety is to pay according to the terms of his promise, and he may protect himself by paying, and then proceeding against the principal, and that is his remedy.    \*    \*    \*    The authorities are decidedly in favor of the proposition, in absence of any statutory provision controlling it, that if, after the debt is due, the surety request the creditor to sue the principal, who is then solvent, and the creditor fails to do so, and the principal afterwards becomes insolvent, the surety is not thereby discharged.    And if there were no authorities on the subject, considering the nature of the obligation of a surety, we do not well see how the contrary could be maintained.    The contract of the surety to pay is as absolute as that of the principal, and he cannot change his absolute promise into a conditional one to pay, providing the creditor cannot collect from the principal.    The averment in the answer that the plaintiff theretofore agreed to, and did, release the defendant from all liability on the note, is the averment of a legal conclusion; and the further averment that the plaintiff then and there told the defendant to rest easy, that he would not look to him for the payment of the note, but that the principal was good enough for him, and that he would trust him for the payment thereof, is a promise without a consideration, and would not have prevented the plaintiff, the payee, from at once commencing action against the surety to collect the note.''    We are aware that there are some authorities which hold with appellant's contention; but recent authorities draw a marked distinction ''between cases where the relation of principal and surety existed *inter se* at the time the obligation was entered into, of which the creditor had knowledge, and a case of joint principals *inter se* at the date of the obligation, and a subsequent agreement between the joint

debtors by which, as between themselves, one becomes a surety for the other, of which subsequent arrangement the creditor had knowledge." (*Rawson* v. *Taylor, supra; Swire* v. *Redman,* 1 Q. B. Div. 536.)

We are firmly of the opinion that one obligor cannot change his relation to his creditor by any agreement with his joint obligor without the creditor's consent. In view of the foregoing authorities, we are of the opinion that the answer of appellant did not state facts sufficient to constitute a defense, and that there was no error in the action of the court in sustaining the demurrer thereto. The judgment appealed from is affirmed.

*Affirmed.*

HUNT and BUCK, JJ., concur.